Robert Rolando BROKUS, Appellant (Respondent Below)

v.

Diane Lucille BROKUS, Appellee (Petitioner Below).

No. 3–880A235.

Court of Appeals of Indiana, Third District.

May 18, 1981.

David L. Hollenbeck and Thomas F. Macke, Blachly, Tabor, Bozik & Hartman, Valparaiso, for appellant.

Roy G. Moutaw, Valparaiso, for appellee.

HOFFMAN, Presiding Judge.

This appeal arose from an order granting a dissolution of marriage in which Diane Brokus was awarded custody of the parties' three minor children.

Robert (Robert) and Diane (Diane) Brokus were married on November 17, 1973. At the time, Robert was a member of the United States Army, stationed at Porter Nike Base in Porter County, Indiana, and Diane was a civilian employed at the base. In October of 1974, after the birth of their first daughter, Sonia, Robert was transferred to Hawaii, and Diane and their daughter joined him there in December of 1974. On June 8, 1976, twin daughters were born to the parties while they were in Hawaii. In September of 1977, Robert was transferred to Fort Rucker, Alabama and was accompanied there by Diane and the three children.

On May 25, 1978, Robert mustered out of the Army in Alabama. The parties' furniture and belongings were shipped by the Army to Sheffield Lake, Ohio, the place where Robert entered the Army. The parties and their children then drove to Sheffield Lake, Ohio and stayed with Robert's parents for two weeks.

On June 10, 1978, the parties and their children left Ohio and came to Diane's mother's residence in Chesterton, Indiana. Soon thereafter, Robert returned to Ohio to find a job and a place for the family to live. Diane and the children remained in Chesterton. During the summer of 1978, Robert periodically visited the family in Indiana. On August 4, 1978, Robert obtained employment in Ohio and sent money and food stamps to Diane and the children in Indiana. On August 23, 1978, Diane sent a letter to Robert discussing his recent employment, money and finding a home to rent.

On September 8, 1978, Diane informed Robert, by letter, that she wanted a divorce. After a discussion, the parties decided not to take any legal action until February. On October 8, 1978, Robert came to Indiana where he sought and obtained permission from Diane to take the children to Ohio for two weeks to visit his mother. On October 20, 1978 he signed an affidavit regarding his desire for custody of the three children. After several telephone calls in which Robert told Diane he could not return the children due to his employment schedule, Diane made arrangements to go to Ohio to pick up the children on November 10, 1978. On November 3, 1978, Robert filed an application to determine custody in Lorain County Domestic Relations Court, Juvenile Division. Diane received notice of the application on November 6, 1978.

On November 14, 1978, Diane filed her petition for dissolution of marriage and a motion for provisional orders and temporary restraining orders without notice in the Porter Superior Court. The Porter Superior Court granted the motion and set the provisional hearing for November 30, 1978. On November 30, 1978, due to a conflict in the court's schedule, the court continued the proceedings until January 10, 1979.

On December 4, 1978, Robert filed a motion for temporary possession of minor children in the Lorain County Domestic Relations Court and was granted temporary custody of the minor children. On January 4, 1979, Robert filed a motion in the Porter Superior Court to dismiss Diane's action for custody. On January 25, the Lorain County Domestic Relations Court conducted a hearing on Diane's motion to dismiss. Her motion was denied and the court ordered the December 4, 1978 order to continue.

On February 22, 1979, Diane went to Robert's home in Ohio and cared for the children. On March 5, 1979, Diane returned to Indiana with the children. On March 14, 1979, Robert filed a motion for writ of assistance. A hearing was held in the Por-

ter Superior Court on March 16, 1979, at which time Robert's motion to dismiss the child custody prayer and his motion for a writ of assistance were both denied.

A final hearing on Diane's petition for dissolution of marriage was held on March 23, 1979. On April 27, 1979, the Indiana trial court entered its order, nunc pro tunc to March 23, 1979, granting final dissolution, awarding custody of the three minor children to Diane and ordering Robert to pay support. On May 21, 1979, the Lorain County Domestic Relations Court entered a final custody decree granting the father custody.

The issues raised in this appeal have been restated as follows:

(1) whether the trial court erred in granting Diane's petition for dissolution of marriage, after finding as fact that she had been a resident of Indiana since June of 1978;

(2) whether the trial court erred in determining custody of the three minor children pursuant to Diane's petition for dissolution of marriage;

(3) whether the trial court erred in determining it had jurisdiction to enter a custody decree under the Uniform Child Custody Jurisdiction Act; and

(4) whether there was an abuse of discretion by the trial court.

Because of the decision of this Court, the other issues raised by Robert on appeal need not be reached in this opinion.

█ Following testimony at the March 16 hearing that Diane and the children remained in Porter County, Indiana after coming there June 10, 1978, the trial court found as fact that Diane Brokus had been a resident of Indiana since June of 1978. The trial court further found as fact that the petition for dissolution of marriage was filed on November 14, 1978.

Indiana law in effect in 1978, when Diane filed her petition, stated:

"31–1–11.5–6. Residence and venue.—(a) At the time of the filing of a petition pursuant to section 3(a) [31–1–11.5–3(a)] at least one of the parties shall have been a resident of the state or stationed at a United States military installation within the state for six [6] months immediately preceding the filing of each petition." Based upon the judge's findings of fact, it is clear that Diane did not meet the six-month residency requirement before filing her petition.

Under prior law, the residency requirement for divorce petitions was two years residency in the state. While that statute was in effect, this Court decided that residency requirements were jurisdictionally mandatory and failure to prove residency required reversal. *Davidson v. Davidson* (1950), 120 Ind.App. 253, 90 N.E.2d 821, *rehearing denied*, 120 Ind.App. 255, 91 N.E.2d 796; *Berghean v. Berghean* (1943), 113 Ind.App. 412, 48 N.E.2d 1001. The Legislature changed the period of time required to establish residency in Indiana for purposes of marriage dissolutions, however, the effect of the failure to meet those requirements has not changed.

This Court is aware that in the case of *In re Marriage of Rinderknecht* (1977), Ind.App., 367 N.E.2d 1128, it was decided that a man who was a resident of Hendricks County, Indiana at the time he enlisted in the military service, did not lose that status for the purpose of filing his petition for dissolution of marriage. Diane contends that her situation is analogous to that of Mr. Rinderknecht.

However in the case at hand, the judge heard all the evidence and found as fact that Diane had been a resident of Indiana since June of 1978. After hearing the evidence, he did not find that her status as a resident of Indiana went unchanged while she accompanied her husband to other states. In effect, Diane is asking this Court to reweigh the evidence, and this we will not do. *Spall v. Janota* (1980), Ind.App., 406 N.E.2d 378.

█ When the error involved is in the correctness of the trial court's application of the law, the reviewing court must correctly apply the law to the findings of the trial court rather than reconsidering the evi-

dence. *Lake Co. Title Co. v. Root Enterprises* (1975), 167 Ind.App. 559, 339 N.E.2d 103; *Merryman v. Price* (1970), 147 Ind. App. 295, 259 N.E.2d 883, *cert. denied*, 404 U.S. 852, 92 S.Ct. 89, 30 L.Ed.2d 92.

In applying the law correctly to the trial court's findings of fact, it is clear that Diane was not a resident of Indiana for six months prior to filing her petition for dissolution of marriage and, therefore, the trial court did not have jurisdiction to grant the dissolution. It is clear from the record that the trial court was aware of the problem the residency requirements created for Diane. It questioned Diane on this very subject.

"THE COURT: Now, you're supposed to be a resident of this state for six months, Mrs. Brokus, before you file a request for a dissolution, divorce, and you were here from June 10 of '78. You filed your petition, I believe, in March—excuse me, in November?

"MR. HOLLENBECK [Attorney for Mr. Brokus]: November 14, Your Honor.

"THE COURT: November 14, which is over five months but under six months?

"THE WITNESS: Yes, Your Honor."

Yet, the trial court proceeded to grant the dissolution of marriage. This judgment must be reversed. While the effect of this reversal is distressing to this Court, such blatant disregard of the law by a trial court cannot be upheld.

Robert argues that because the trial court did not have the jurisdiction to grant the dissolution of marriage, it did not have jurisdiction to award custody of the three minor children to Diane.

IC 1971, 31–1–11.5–20 (Burns 1980 Repl.) states:

"Child custody proceeding—Jurisdiction. —A child custody proceeding is commenced in the court by a parent by filing a petition pursuant to section 4(a) or (b) [31–1–11.5–4(a) or 31–1–11.5–4(b)] of this chapter; or by a person other than a parent, by filing a petition seeking a determination of custody of the child. Jurisdiction of a child custody proceeding either under this section or IC 31–1–11.6 [31–1–11.6–1—31–1–11.6–24], shall be pursuant to IC 31–1–11.6."

IC 1971, 31–1–11.5–4(a) pertains to the commencement of a proceeding for dissolution of marriage. IC 1971, 31–1–11.5–4(b), as referred to in section 20, pertains to the commencement of a proceeding for child support. IC 1971, 31–1–11.5–6(c) states:

"In an action for child support pursuant to section 3(b) [31–1–11.5–3(b)] of this chapter, the above residence provisions [six months] shall not be required: Provided, however, That one [1] of such parties must reside in the state and county at the time of the filing of the action."

In summary, a child custody proceeding may be commenced by filing either a petition for support or a petition for dissolution of marriage, and an action for child support does not have a jurisdictional requirement that a party reside in the state for six months prior to filing.

Diane's petition included requests for dissolution of marriage, custody and child support. Since she petitioned for child support and the six-month residency requirement does not apply to petitions for child support, the trial court did have jurisdiction over the custody award because it was made pursuant to a valid child support petition.

While it may be argued that Diane's petition was simply a petition for dissolution of marriage, such an argument is not persuasive. It is well established in Indiana that pleadings are to be examined and treated as to their content rather than their captions. *McQueen v. State* (1979), Ind., 396 N.E.2d 903; *Jones v. Castor*, (1966), 140 Ind.App. 342, 214 N.E.2d 180. Diane's petition contained a request for support, thus it was a valid petition for support and gave rise to a proper exercise of jurisdiction by the trial court over the custody award.

This brings us to the trial court's application of the Uniform Child Custody Jurisdic-

tion Act (UCCJA) as it has been adopted in Indiana in 1977.[1]

With the growing population of children of divorced parents and the high mobility of people today, interstate custody disputes have become a common occurrence. Although each court which takes jurisdiction in these disputes ostensibly believes it is acting to protect the interests of the children involved, too often the result is upheaval, insecurity and instability, as in the case before us.

Psychologists have recognized that children involved in a divorce situation have a great need for continuity and stability.[2] And all agree that in an interstate custody dispute, the interests of the children are paramount. To increase the probability that a custody decision will be in the best interests of the child, the case should be decided in the court with the greatest access to relevant information. This is precisely what the UCCJA is designed to do.

Parents, too, have significant interests at stake. The action should be in a forum which is fair to both parties. Jurisdiction should be predictable and not subject to the arbitrary control of either party seeking to gain a tactical advantage.

The UCCJA presents an elaborate jurisdictional scheme designed to protect the child's welfare. It establishes two main places of initial jurisdiction: the "home state"[3] of the child and the state with a "significant connection"[4] to the child and one or both parents. The "home state" is defined as the state in which the child has most recently resided for at least six consecutive months.[5] The extension of jurisdiction to a state with a "significant connection" is phrased in general terms. This flexibility enables the statute to provide for diverse fact situations. The commissioners

who wrote the UCCJA admonish us, however, that this paragraph, perhaps more than any other provision of the UCCJA requires that it be interpreted in the spirit of the legislative purposes expressed in the UCCJA. Its purpose is to limit jurisdiction rather than to proliferate it.[6]

While jurisdiction may exist in more than one state under the "home state" and "significant connection" clauses, jurisdiction may not be exercised concurrently in two or more states. Two mechanisms are provided to avoid conflicting jurisdiction. First, priority of filing of the petition determines which of the courts may proceed.[7] Secondly, jurisdiction may be declined by one of the courts under the inconvenient forum principle.[8] In both cases, direct interstate judicial communication and cooperation are expected and encouraged in order to make the provisions fully workable and to carry out the UCCJA's strong policy against competitive proceedings. From the record of the case at hand, it appears no communication was attempted by either the Indiana or Ohio court involved.

The purposes section of the statute prominently lists the desire to "[a]void jurisdictional competition and conflict with courts of other states in matters of child custody" and to "[p]romote and expand the exchange of information and other forms of mutual assistance between the courts."[9] These are not empty words. Relevant facts may be dispersed over three or four states. There is not an exact answer to the question of jurisdiction in every case. However, if courts cooperate, it matters less *which* court takes jurisdiction, but that the courts concerned join in an effort to bring about the best possible solution for the child's future.

The facts of the case at hand represent a prime example of exactly what the UCCJA

---

1. IC 1971, 31–1–11.6–1 *et seq..*

2. J. Goldstein, A. Freud, and A. Solnit, *Beyond the Best Interests of the Child* (1973).

3. IC 1971, 31–1–11.6–3(a)(1).

4. IC 1971, 31–1–11.6–3(a)(2).

5. IC 1971, 31–1–11.6–2(5).

6. 9 U.L.A. § 3 (1979).

7. IC 1971, 31–1–11.6–6.

8. IC 1971, 31–1–11.6–7.

9. IC 1971, 31–1–11.6–1.

was designed to prevent. It appears that both parties may have come into their respective courts after taking measures of self help in obtaining possession of their children. And the record shows a complete lack of cooperation on the part of the two trial courts involved.

Robert contends that the Indiana trial court failed to determine its jurisdiction correctly pursuant to IC 1971, 31–1–11.6–3, failed to adhere to the procedures of IC 1971, 31–1–11.6–6 and should have declined to exercise its jurisdiction pursuant to IC 1971, 31–1–11.6–8.

■ IC 1971, 31–1–11.6–3 is the section of the statute pertaining to jurisdiction which was discussed earlier as containing the "home state" and "significant connection" bases upon which to determine jurisdiction. This Court has said that the first step for the trial court in a child custody proceeding is to determine whether or not it has jurisdiction. *Clark v. Clark* (1980), Ind. App., 404 N.E.2d 23; *Campbell v. Campbell* (1979), Ind.App., 388 N.E.2d 607.

In its findings of fact, the trial court determined that Diane and the children had been residents of Indiana since June 10, 1978. Therefore, it is clear that the "home state" test was not met, since six months had not elapsed. Neither had they lived in Ohio for six months.

■ However, there was evidence that during the five months the children had lived in Indiana, they were enrolled in nursery school and attended church regularly with their mother. Also entered into evidence was a report from the Porter County Department of Welfare as to the condition of the home in which they were living. Since there was substantial evidence available in Indiana concerning the welfare of the children, it seems that Indiana was the state with a "significant connection" to the children and their mother, and thus, the trial court properly determined it had jurisdiction on this theory.

IC 1971, 31–1–11.6–6 provides procedures for a trial court to take in the event a custody proceeding is pending in another state. Robert contends that the Indiana trial court should have stayed the Indiana proceeding pursuant to this section when it was advised of the pending Ohio proceeding.

However, the statute says:

"31–1–11.6–6. Simultaneous proceedings in other states.—(a) A court of this state shall not exercise its jurisdiction under this chapter if at the time of filing the petition a proceeding concerning the custody of the child was pending in a court of another state *exercising jurisdiction substantially in conformity with this chapter*, unless the proceeding is stayed by the court of the other state because this state is a more appropriate forum or for other reasons." (Emphasis added.)

From the record, it appears that the trial court in Ohio was not "exercising jurisdiction substantially in conformity with" the UCCJA.

Ohio did not meet either the "home state" or "significant connection" test since they had only been in Ohio with their father from October 8, 1978 until the filing of the petition on November 3, 1978. Robert alleged that there was an emergency and that the children were neglected; however, no evidence of neglect was submitted and since the children were currently in possession, an emergency cannot be inferred. Brigette M. Bodenheimer, the reporter for the special committee of the commissioners on uniform state laws which prepared the UCCJA, stated, "If the presence of the child and a contestant in the state is only temporary, such as a visit with relatives, business meetings, or the institution of the custody proceeding itself, a court in that state does not have jurisdiction to determine custody." [10]

■ If a proceeding concerning the custody of a child is pending in another state, but not in substantial conformity with the UCCJA, an Indiana court may assume jurisdiction, notwithstanding the pending foreign proceeding. *State, etc. v. Marion*

**10.** 22 Vanderbilt Law Review 1207, at 1228 (1969).

*County Superior Court* (1980), Ind., 403 N.E.2d 806.

Robert further argues that the trial court should have denied jurisdiction pursuant to IC 1971, 31–1–11.6–8 because Diane wrongfully took the children from Ohio. There is conflicting evidence on whether or not the children were "wrongfully" taken and furthermore the taking occurred after Diane's petition had been filed. But Robert's argument is easily defeated since the language of the statute says that the court *"may"* decline to exercise jurisdiction under such circumstances, but does not say the court *shall* deny jurisdiction. Therefore, any such decision is clearly within the trial court's discretion.

■ It is the conclusion of this Court that based upon the facts presented in this case, Indiana was the proper state to exercise jurisdiction over the child custody proceeding.

■ The final issue to be discussed is whether or not the trial court abused its discretion in the course of the trial to a degree which requires reversal of the judgment. From the record of the case before us, it is clear that such a prejudicial abuse did exist.

The record is replete with statements and actions by the trial court exemplifying its prejudice on the part of Diane. However, perhaps the most blatant example is a statement made by the trial court during opening statements, prior to the introduction of evidence.

"MR. ROSENFIELD [Attorney for Mr. Brokus]:

He [Robert] has a desire to have custody of the children if that's the case.

"THE COURT: You can't take two or three year old girls away from their mother.

I don't see what his end result is, without building up a lot of attorney fees, two different states. The outcome eventually will be to dissolve the marriage either here or in Ohio and I'm sure she's going to obtain custody of the twins, born—was that '70—"

IC 1971, 31–1–11.5–21 clearly states:

"Child custody—Best interests of child—Relevant factors—Continuing supervision—Professional advice.—(a) The court shall determine custody and enter a custody order in accordance with the best interests of the child. In determining the best interests of the child, there shall be no presumption favoring either parent."

In a recent case this Court held that a trial court abused its discretion in awarding custody to the mother when it acted under a presumption that the mother should have custody. *In re Marriage of Myers* (1979), Ind.App., 387 N.E.2d 1360. In *Myers* the statements by the judge involved were not made in court during the proceedings and in fact were made after both sides had rested. To be sure, the circumstances surrounding this trial court's statements and actions make them far more flagrant and prejudicial.

The partial manner in which the trial court conducted this hearing, in effect, denied Robert of his right to a fair trial, and therefore the judgment must be reversed.

While this Court believes Indiana is the proper forum in which to determine the custody of these children pursuant to the UCCJA, due to the reversible error which has been found both in the improper granting of the dissolution of marriage and the abuse of discretion by the trial court, the judgment is reversed. The cause is remanded for a new trial on the custody award with an admonishment that the trial court pay close attention to the purposes of the UCCJA in obtaining all the relevant evidence necessary to decide the future of these children for what will hopefully be the last time.

Reversed and remanded.

GARRARD and STATON, JJ., concur.