**In re the Marriage of Karl HORLANDER, Appellant–Petitioner,**

**v.**

**Elisabeth HORLANDER, Appellee–Respondent.**

**No. 49A02–9010–CV–588[1].**

Court of Appeals of Indiana, First District.

Sept. 30, 1991.

Rehearing Denied Nov. 1, 1991.

1. This case has been diverted to this office by order of the Chief Judge.

M. Kent Newton, Kevin A. Hoover, Krieg DeVault Alexander & Capehart, Indianapolis, for appellant-petitioner.

John P. Young, Young & Young, Indianapolis, for appellee-respondent.

RATLIFF, Chief Judge.

## STATEMENT OF THE CASE

Karl Horlander appeals from the grant of Elisabeth Horlander's motion to dismiss his petition for dissolution. We reverse and remand.

## ISSUES

We restate the issues on appeal as follows:

1. Did the trial court erroneously dismiss the portions of this action regarding the dissolution and the division of marital property in favor of the dissolution action pending in the French Court?

2. Did the trial court erroneously find France has jurisdiction over the child custody dispute?

3. Did the trial court erroneously find that France is a more convenient forum for this action?

4. Does the trial court's decision contravene public policy as expressed by the purpose of the Uniform Child Custody Jurisdiction Act ("UCCJA") and the Hague Convention on the civil aspects of international child abduction?

5. Did the trial court rely on improper evidence?

## FACTS

In January of 1985, Elisabeth came to the United States from France to attend college as an exchange student at the University of Kentucky where she met Karl Horlander. Subsequently, they were engaged. In mid-May 1986, Elisabeth returned to France to prepare for the parties' wedding. Karl and Elisabeth were married in Meaux, France on May 25, 1986 and stayed in France approximately one month before returning to Indianapolis, Indiana to live.

While in Indianapolis, the Horlanders had two children, Alison Marie, born August 28, 1987, and Matthieu Francis, born April 25, 1989. On or about July 29, 1989, Elisabeth took the children and left Indianapolis to return to France. On September 20, 1989, Elisabeth filed a dissolution action in France asking for maintenance, child custody, and child support.

On October 18, 1989, Karl filed for legal separation in Indiana. Eight days later he filed his petition for emergency preliminary custody hearing and the hearing was scheduled for November 6, 1989. On November 3, 1989, Elisabeth, by her counsel, filed a motion to dismiss the action asserting that Elisabeth previously had filed an action in France to dissolve the parties' marriage, and therefore, the trial court should dismiss the action in deference to the French proceeding and also on the ground that the French court is a more convenient forum for the resolution of the issues. On November 6, 1989, the trial court decided to hear only Elisabeth's motion. Subsequently, the motion to dismiss was denied, the trial court finding that Indiana did have jurisdiction over the matter. Elisabeth's petition to certify the matter for interlocutory appeal was denied by the Indiana Court of Appeals.

On January 29, 1990, Elisabeth filed a motion for relief from the order which was denied. She then filed a motion to reconsider which was set for hearing. Thereafter, Karl filed his verified petition for dissolution of marriage. On April 12, 1990, Elisabeth filed a motion to dismiss Karl's petition, which after a hearing, was grant-ed. It is from this dismissal that Karl Horlander now appeals.

## DISCUSSION AND DECISION

On June 15, 1990, the court granted Elisabeth's motion to dismiss Karl's petition. Karl's petition asks for a decree of dissolution of their marriage, division of their marital property and custody of their minor children. Although neither party raises the issue, it is important to recognize that a determination a court does or does not have jurisdiction over a dissolution proceeding does not answer the question of whether the court has jurisdiction to entertain a custody determination; therefore, we will address each separately. *See* Clark, *Domestic Relations* § 13.5, p. 774 (2d ed. 1987); *see also In Re Marriage of Hudson* (1982), Ind.App., 434 N.E.2d 107, *cert. denied* 459 U.S. 1202, 103 S.Ct. 1187, 75 L.Ed.2d 433 (separate analyses of court's jurisdiction regarding dissolution, property distribution, and child custody).

*Issue One*

■ A party's residence in this state, six months immediately preceding the filing of his petition for dissolution of marriage or legal separation, provides the trial court with sufficient contacts to establish jurisdiction over the parties' marital status. IND.CODE § 31-1-11.5-5. Clearly, the Indiana court has jurisdiction over the actual dissolution of the Horlanders' marriage. Karl's verified petition for dissolution states that he has been a resident of Marion County, Indiana for more than six months and Elisabeth does not argue otherwise.

■ As for the trial court's jurisdiction over the Horlanders' marital property, it is required that a court must have *in personam* jurisdiction over both parties. *Hudson*, 434 N.E.2d at 112. A court obtains such jurisdiction if "minimum contacts" exist between the state and the party over whom the state seeks to exercise control. *Id.* The "minimum contacts" requirement can be met under Ind. Trial Rule 4.4(A)(7). *Id.* T.R. 4.4(A)(7) dictates that any person who lived in a marital relationship in Indiana and subsequently has left,

leaving behind a spouse who continues to reside in Indiana, submits to jurisdiction of this state. Since Elisabeth has lived in a marital relationship with Karl in the state of Indiana and Karl continues to reside in Indiana, the trial court has jurisdiction to distribute the marital property.

Elisabeth contends that the trial court properly declined to exercise jurisdiction over the entire action on the bases of comity and inconvenient forum. Comity unlike full faith and credit, is not a constitutional requirement but a rule of convenience and courtesy. *County of Ventura, State of California v. Neice* (1982), Ind.App., 434 N.E.2d 907, 910. The doctrine of *forum non conveniens* is likewise a discretionary rule. Factors to be considered in determining the proper forum are:

"... the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses ... and all other practical problems that make the trial of the case easy, expeditious and inexpensive. There may also be questions as to the enforceability of a judgment if one is obtained. The court will weigh relative advantages and obstacles to a fair trial."

*Gulf Oil Corporation v. Gilbert* (1947), 330 U.S. 501, 509, 67 S.Ct. 839, 844, 91 L.Ed. 1055, 1062.

■ The trial court recognized that there would be inconvenience no matter which court exercised jurisdiction; however, it improperly concluded that France would be a more convenient forum. The parties have lived in Indiana throughout their marital relationship; witnesses who knew Karl and Elisabeth as husband and wife live primarily in Indiana; and, the marital property is located in Indiana.

Moreover, Karl is a United States citizen, which also has some bearing on whether the trial court abused its discretion when it dismissed this action in favor of a foreign court. In *Dorati v. Dorati* (1975), D.C.App., 342 A.2d 18, 21, the court stated that "... a United States Court will rarely dismiss a case on the ground of *forum non*

*conveniens* when the only alternative is a foreign one." *Dorati* went on to require that courts have "... positive evidence of unusually extreme circumstances and should be thoroughly convinced that material injustice is manifest before exercising any ... discretion to deny a citizen access to the courts of this country." *Id.* at 21–22. We adopt the reasoning in *Dorati* and find that there would be no material injustice done if Elisabeth is required to litigate the dissolution and division of marital property in Indiana.

*Issue Two*

A child custody proceeding may be commenced pursuant to the filing of a petition for dissolution. I.C. § 31–1–11.5–20(a); *Hudson*, 434 N.E.2d at 114. However, jurisdiction of a child custody proceeding is determined by reference to the Uniform Child Custody Jurisdiction Law ("UCCJL"), I.C. § 31–1–11.6–1 et seq.[2] The initial question that we need to answer is whether the UCCJL applies to proceedings in a foreign nation. I.C. § 31–1–11.6–23 provides that "[t]he general policies of this chapter extend to the international area." Therefore, there is no difficulty in applying the provisions of the UCCJL to the facts of this case when the alternative jurisdiction for the custody determination would be France.

Karl asserts that the trial court improperly dismissed his petition because France, the "state" to which the court deferred jurisdiction, was not the "home state" of the children pursuant to the UCCJL. A trial court has an affirmative duty to determine the question of its subject matter jurisdiction in interstate [international] child custody disputes. *Clark v. Clark* (1980), Ind.App., 404 N.E.2d 23, 28. The issue of a court's subject matter jurisdiction can be raised at any time by either party or sua sponte by this court on appeal. *Id.* at 30.

Indiana adopted the UCCJL as Indiana Code § 31–1–11.6–1 to 24, in 1977, making it the exclusive method of determining the subject matter jurisdiction of a court in a

2. The UCCJL is Indiana's version of the Uniform Child Custody Jurisdiction Act ("UCCJA").

custody dispute with an interstate dimension. *Campbell v. Campbell* (1979), 180 Ind.App. 351, 353, 388 N.E.2d 607, 608. In *Clark*, this court set forth the primary questions a court involved in deciding an interstate custody determination must address:

"In confronting the issue of its own subject matter jurisdiction when it becomes aware of an interstate custody dispute, the court must engage in a multistep process to determine first, whether it has subject matter jurisdiction, and second, whether to exercise that jurisdiction. That procedure is based on the two tier approach to the issue of jurisdiction set forth in *Campbell v. Campbell, supra,* pursuant to IC 31–1–11.6–3 and IC 31–1–11.6–6, 31–1–11.6–7. The precise steps which a court should follow under the Uniform Act have been succinctly set out in *Carson v. Carson* (1977), 29 Or.App. 861, 565 P.2d 763, 764–765:

'Under the Act the court must go through a multistep process in determining whether to exercise jurisdiction. First it must ascertain whether it has jurisdiction under ORS 109.730. [IC 31–1–11.6–3] If it finds that there is jurisdiction, then the court must determine whether there is a custody proceeding pending or a decree in another state which presently has jurisdiction. If so, the Oregon [Indiana] court must decline to exercise its jurisdiction. ORS 109.706(1) and 109.-840(1). [IC 31–1–11.6–6] Finally, assuming the court has jurisdiction and there is not a proceeding pending or a decree, the court then must determine under ORS 109.770 and 109.780 [IC 31–1–11.6–7] whether to exercise its jurisdiction because of convenient forum.'"

*Clark*, 404 N.E.2d at 29–30.

■ Following the first step of *Clark*, the Indiana trial court properly found it has jurisdiction of the custody proceeding. The UCCJL sets forth the jurisdictional requirements necessary for a court to assume subject matter jurisdiction in a custody proceeding:

"Jurisdiction. (a) A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

(1) this state (A) is the home state of the child at the time of commencement of the proceedings, or (B) had been the child's home state within six (6) months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state...."

I.C. § 31–1–11.6–3. The "home state" concept used in I.C. § 31–1–11.6–3(a)(1), to determine the court's jurisdiction, is defined in I.C. § 31–1–11.6–2(5) as "the state in which the child, immediately preceding the time involved, lived with ... a parent ... for at least six (6) consecutive months and in the case of a child less than six (6) months old the state which the child lived from birth...." I.C. § 31–1–11.6–2(5).

Alison lived in Indiana from the time of her birth, August 28, 1987, until she was taken to France by her mother on July 29, 1989, and Matthieu lived in Indiana from his birth, April 25, 1989, until that time also. Karl's petition for legal separation was filed in Indiana on October 18, 1989; thus, Indiana was the children's home within six months prior to the commencement of this proceeding, and the children are absent from Indiana because of the retention or removal by their mother. Clearly, Indiana is the children's "home state" pursuant to I.C. § 31–1–11.6–3(a)(1)(B).

Elisabeth concedes that the Indiana trial court has subject matter jurisdiction as did the trial court. However, Elisabeth argues that the French court also has jurisdiction to hear this case pursuant to *Code Civil,* book 1, arts. 102–111, (Fr.) and that the trial court properly found the French court is a more convenient forum and should hear this case on the basis of *forum non conveniens* and principles of comity. We do not agree.

The second sentence of I.C. § 31–1–11.6–23 states "... the provisions of this chap-

ter relating to the recognition and enforcement of custody decrees of other states apply to custody decrees and decrees involving legal institutions similar in nature to custody rendered by appropriate authorities of other nations if reasonable notice and opportunity to be heard were given to all affected persons." In their comments, the original drafters of the UCCJA expressed their intent when enacting this sentence. The comments point out that the sentence was to come into play only when there has been a decree rendered in a foreign country which has afforded reasonable notice and an opportunity to be heard to the persons affected. 9 ULA § 23 at 327 (1972 Master ed.). The drafters of the Uniform Act also point out that it is to be "... understood that the foreign tribunal had jurisdiction under its own law rather than under section 3 of this Act." *Id.* Thus, if the French court had rendered a custody decree and Karl had been given notice and an opportunity to be heard, the Indiana court would be bound to recognize that decree. However, the French action was pending at the time Karl instituted his action in Indiana and there was no custody decree to be recognized or enforced; therefore, the second sentence of section 23 does not apply to this proceeding. Such an analysis is even more appropriate given the fact that the drafters of the UCCJA stated, in the same comment, that the "... substance of section 1 and the principles underlying provisions like sections 6, 7, 8, and 14(a), are to be followed when some of the persons involved are in a foreign country or a foreign custody decree is pending." 9 ULA § 23 at 326–327.

■ Therefore, we turn to section 6 of the UCCJL, which is also the next step pursuant to *Clark.* Section 6, entitled "Simultaneous proceedings in other states", provides:

"(a) A court of this state shall not exercise its jurisdiction under this chapter if at the time of filing the petition a proceeding concerning the custody of the children was pending in a court of another state exercising jurisdiction substan-

tially in conformity with this chapter...."

I.C. § 31–1–11.6–6(a).

Karl contends that the pending proceeding in France cannot be recognized because France is not exercising jurisdiction substantially in conformity with the UCCJL, since France is not the children's "home state" and the trial court improperly relied on the "significant connection" test of I.C. § 31–1–11.6–3(a)(2). On the other hand, Elisabeth contends that the court's order entered on June 15, 1990 was based on *forum non conveniens* and not on the "significant connection" test.

The court in dismissing this action entered the following order:

"... [t]his Court had always held that it had jurisdiction regarding this matter, however the Court also believes that France also has jurisdiction regarding this matter. After consideration of the facts in this case, the Court feels that France has more significant contacts with the parties involved and that France is a more convenient forum for said cause, thus preferred venue exists in France."

Record at 213. It is not exactly clear whether the trial court based France's jurisdiction on French law or the UCCJL. Under the UCCJL, a court is required to dismiss a custody dispute when a proceeding is pending in a court exercising jurisdiction substantially in conformity with the chapter. I.C. § 31–1–11.6–1. I.C. § 31–1–11.6–3 is the section of the UCCJL regarding jurisdiction to determine custody disputes. The two major bases for jurisdiction under the UCCJL are the "home state" test and the "significant connection" test. It has already been established that Indiana and not France is the children's "home state" within the meaning of I.C. § 31–1–11.6–2(5). The children had been in France for less than two (2) months when Elisabeth filed the pending French action, not nearly long enough to have become the children's "home state".

Karl asserts that the trial court improperly relied on the "significant connection" test to determine France had jurisdiction

when Indiana was the children's "home state". The "significant connection" test is found in I.C. § 31–1–11.6–3(a)(2) and reads as follows:

"(2) it is in the best interest of the child that a court of this state assume jurisdiction because (A) the child and his parents, or the child and at least one (1) contestant, have a significant connection with this state, and (B) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships;"

I.C. § 31–1–11.6–3. The "significant connection" test was referred to in *Hudson,* and it was noted that the test applies as an alternative basis of subject matter jurisdiction when the "home state" test does not apply to the facts. *Hudson,* 434 N.E.2d at 115. In *Hudson,* it was found that the alternative basis for jurisdiction was to come into play "*... when the child has been recently removed from his or her home state and the remaining spouse has also moved away.*" (Emphasis in the original). *Id.; see also Matter of Guardianship of Mayes* (1988), Ind.App., 523 N.E.2d 249, 251. In the case at bar, the children have been removed from their "home state"; however, the remaining spouse, Karl, has not left Indiana; therefore, there is no need to apply the "significant connection" test as an alternative basis to "home state" jurisdiction.

Some authorities believe that the "significant connection" test does not *only* come into play when no "home state" is found. For example, Clark, *Domestic Relations* states that:

"[t]he various categories of jurisdiction basis in the UCCJA were intended, in the opinion of the drafters, to be alternatives, so that even if there is a state which can qualify as the home state of the child, there may be other states having jurisdiction under other subsections of section 3 of the Act."

Clark, *Domestic Relations* § 13.5, p. 786 (2d ed. 1987) (Clark cites to *Brokus v. Brokus* (1981), Ind.App., 420 N.E.2d 1242, to support this proposition; however, in

*Brokus* the court found that the alternative state, in which a custody action was pending, did not meet either "home state" or the "significant connection" tests. Therefore, the Indiana court properly found that it could assume jurisdiction on the basis of the "significant connection" test notwithstanding the pending foreign proceeding. *Brokus* 420 N.E.2d at 1248–1249). *See also Hattoum v. Hattoum* (1982), 295 Pa.Super. 169, 441 A.2d 403 (*Hattoum* recognizes that "... the Act treats preferable the 'home' jurisdiction."); Bodenheimer, *The Uniform Child Custody Jurisdiction Act,* 22 Vand.L.Rev. 1207, 1226 ("Jurisdiction under this [significant connection test] may be concurrent with jurisdiction under the 'home state' rule if the ties of the family are equal or stronger with another state.").

■ Concerning the "significant connection" test of section 3, the drafters' comments provide the guidelines on how to interpret the section. The drafters state:

"[This subsection] is designed to discourage unilateral removal of children to other states and to guard against too liberal an interpretation of paragraph (2). Short-term presence in the state is not enough even though there may be an intent to establish a technical 'domicile' for divorce or other purposes."

9 ULA § 3 at 145. Thus, even if the "significant connection" test were applicable after Indiana had been found to be the "home state," which we have held to the contrary, *see Hudson* and *Mayes;* it nevertheless would be an abuse of discretion to find France meets the test since the children had been in France for less than two months when Elisabeth filed her action. We conclude that Indiana has jurisdiction over the child custody dispute, and that France does not pursuant to the UCCJL.

*Issue Three*

Even if France is not exercising jurisdiction substantially in conformity with the UCCJL, it may still have been proper for the trial court to consider the issue of inconvenient forum. The drafters to the Uniform Act provide in their comments to section 6:

"[w]hile jurisdiction need not be yielded under subsection (a) [31–1–11.6–6(a)] if the other court would not have jurisdiction under the criteria of this Act, the policy against simultaneous custody proceedings is so strong that it might in a particular situation be appropriate to leave the case to the other courts under such circumstances. See subsection (3) and section 7 [Inconvenient Forum]."

9 ULA § 6 at 220.

■■ Nevertheless, the trial court abused its discretion finding such a situation in this case. I.C. § 31–1–11.6–7 addresses the issue of *forum non conveniens* in the context of child custody disputes. Section 7(a) provides that a court with jurisdiction may nevertheless decline to exercise jurisdiction if it finds that the Indiana court is an inconvenient forum and finds that a court of another state is a more appropriate forum. In this case although the trial court did not make a finding that Indiana was an inconvenient forum, it did enter a holding that France is a more convenient forum.

An analysis of whether Indiana is an inconvenient forum should be guided by I.C. § 31–1–11.6–7(c), which provides:

"in determining if it is an inconvenient forum, the court shall consider if it is in the best interest of the child that another state assume jurisdiction. For this purpose it may take into account the following factors, among others:

(1) if another state is or recently was the child's home state;

(2) if another state has a closer connection with the child and his family or with the child and one (1) or more of the contestants;

(3) if substantial evidence concerning the child's present or future care, protection, training, and personal relationships is more readily available in another state;

(4) if the parties agree to another forum which is no less appropriate; and

(5) if the exercise of jurisdiction by a court of this state would contravene any of the purposes stated in section 1 of this chapter."

Elisabeth correctly notes that the decision to exercise the doctrine of *forum non conveniens* is discretionary: however, we can reverse the trial court upon an abuse of that discretion. In this case Indiana is the only "home state," pursuant to the UCCJL, that the children have known. Although the trial court found that France had significant contacts with the parties, greatly emphasizing the fact the parties were married there; the children had been in France less than two months prior to the filing of Elisabeth's action; Karl has never lived in France; and, the parties lived in a marital relationship in Indiana up until the time Elisabeth left for France.

Also it cannot be said that substantial evidence concerning the children's care and relationships is more readily available in France. The children were born in Indiana; lived in Indiana all their lives, until they were removed by their mother; their father and his family live in Indiana; Karl, in seeking custody is relying upon an alleged medical condition that Elisabeth was treated for in the United States; Elisabeth in seeking custody is relying on Karl's conduct while they lived in Indiana; the children received medical care in Indiana; and, the persons who knew the family as a "family unit" and can testify as to both parents' fitness and the best interest of the children in determining custody, reside in Indiana. Further, finding France had jurisdiction, not Indiana, would contravene the purposes of the UCCJL, which are to litigate custody disputes where the children and family have the closest connections and to deter unilateral removal of the children. I.C. § 31–1–11.6–1(a)(3) and (5). Therefore, the trial court abused its discretion in dismissing the custody dispute on the basis of inconvenient forum.

*Issue Four*

Karl argues that the court's dismissal contravenes public policy as expressed by the purposes of the UCCJA and the Hague Convention on the civil aspects of international child abduction. The principle purposes of the UCCJA have been to discourage forum shopping and to protect the best interests of the children. *Clark*, 404

N.E.2d at 33. The UCCJA sets out jurisdictional rules and methods for determining which state should hear a case; this reflects the general proposition that the state in which there is the best opportunity to investigate the facts is most qualified to take jurisdiction. Bodenheimer, *The Uniform Child Custody Jurisdiction* 6 Vand. L.Rev. 1207, 1221 (1969). By not following the act and by incorrectly finding France a more convenient forum, the Indiana court's dismissal of Karl's petition not only was an abuse of discretion but also conflicts with the policy of the UCCJA.

Whether the court's dismissal was contrary to the Hague Convention policy is inapplicable to this review, as is any discussion of Karl's petition to the Hague Convention since we are not reviewing the Hague proceeding.

*Issue Five*

Karl contends that the court improperly considered the briefs and affidavits filed in support of the motion to dismiss. More specifically, Karl points to conflicting statements between the briefs and affidavits. The conflicting statements concern Elisabeth's address in France; the children's address in France; when the decision to stay in France was made; and, if Karl knew Elisabeth's intent. In addition, Karl argues that affidavits submitted by Elisabeth contain legal and self-serving conclusions that should not have been admitted. Since these statements concern the merits of the case and have no bearing on which court has jurisdiction or should exercise it, we do not address this issue.

Reversed and remanded for further proceedings consistent with this opinion.

Costs are assessed against the appellee.

GARRARD, J., concurs.

SULLIVAN, J., concurs in part and dissents in part with separate opinion.

SULLIVAN, Judge, dissenting in part and concurring in part.

The majority opinion's disposition is not inappropriate insofar as it requires reinstatement of the property distribution and marital status aspects of the dissolution action. I dissent, however, from the mandate that the Marion Superior Court resolve the contested issues of custody and child support.

In the past, this court has sanctioned bifurcation between jurisdictions with regard to child custody *vis a vis* dissolution of the marriage and property distribution. *See, e.g., In Re Marriage of Cline* (1982) 1st Dist. Ind.App., 433 N.E.2d 51. Other than an inconvenience and a certain amount of duplication which are inherent in any bifurcation of proceedings, there is nothing questionable about such procedure. In my view, it is appropriate in this case and I discern no procedural impediment to affirmance of that portion of the trial court's judgment which declined to exercise jurisdiction of the custody issue and which deferred to the French court.

Without question, the Marion Superior Court had initial jurisdiction over the matter pursuant to I.C. 31–1–11.6–3. Indiana had been the "home state" of the children within six months preceding November 3, 1989, the date of the filing of Karl's petition for emergency or temporary custody. Had it desired to do so, it may have chosen to exercise that jurisdiction. The court did not choose to do so, however. The court made no determination with regard to custody or jurisdiction over the subject until June 15, 1990, when it granted Elisabeth's Motion to Dismiss. In so ruling, the court clearly and properly held that it had jurisdiction but that in light of the proceeding pending in France since September 20, 1989, France "was the more convenient forum". Record at 215.

It should be noted that as of that date, June 15, 1990, the children had resided in France for longer than ten months and that therefore France had achieved a "home state" status with reference to the intendment and purposes of I.C. 31–1–11.6–7. As a corollary proposition, it may be suggested that Indiana arguably lost "home state" status six months after the children went to France with their mother. The latter proposition, however, is not a necessary factor in assessing the propriety of the

ruling which declined to exercise custody jurisdiction.

To be sure, at the time Karl filed his petition in Indiana, the French proceeding was pending but was not a "simultaneous proceeding" within the meaning of I.C. 31–1–11.6–6 because the children had not yet resided in France for the requisite six months. Therefore the French court could not be said to be "exercising jurisdiction substantially in conformity with [the UCCJA]." I.C. 31–1–11.6–6(a). Nevertheless, before the Indiana court made the determination whether or not to exercise jurisdiction, it was aware of the pendency of the proceeding in France and therefore had the duty to communicate with the French tribunal so that, in the words of subsection (c) of the provision, "the issue may be litigated in the more appropriate forum".

In addition to the duty to communicate, the Indiana court was obligated to implement the considerations and procedures of I.C. 31–1–11.6–7 without regard to the determination of initial jurisdiction under § 3, or to the existence *vel non* of a simultaneous proceeding under § 6. *Hepner v. Hepner* (1984) 3d Dist. Ind.App., 469 N.E.2d 780.

The Marion Superior Court did precisely that. Thus, the case before us is wholly unlike *Clark v. Clark* (1980) 1st Dist. Ind. App., 404 N.E.2d 23, which involved relationships between the parties and Indiana on the one hand and Kentucky on the other. No "jurisdictional conflict or confusion", which the UCCJA is designed to avoid, was threatened in *Clark* because at no time was a proceeding brought, or even contemplated in Kentucky.

It is the purpose of § 7 that jurisdiction be vested in only one forum at any given time. *Campbell v. Campbell* (1979) 1st Dist., 180 Ind.App. 351, 388 N.E.2d 607. It was, therefore, within the prerogative of the court, in June of 1990, not yet having exercised jurisdiction, to determine that France was a more convenient forum for the determination of the custody issue. The determination that France met the criteria set forth in I.C. 31–1–11.6–7(c) was

wholly reasonable. France was, as of that date, the present "home state" as contemplated under (c)(1). France had a closer connection than Indiana with the children and their mother as contemplated under (c)(2), and substantial evidence of the children's present and future care, protection, training and personal relationships was certainly more readily available in France, as specified in (c)(3).

I.C. 31–1–11.6–7(c)(5) makes it clear that the purposes of the Act are the paramount consideration in any decision whether or not to exercise custody jurisdiction. The purposes set forth in I.C. 31–1–11.6–1 are as follows:

"Sec. 1 Purposes and Construction of Law. (a) The general purposes of this law are to:

(1) avoid jurisdictional competition and conflict with courts of other states in matters of child custody which have in the past resulted in the shifting of children from state to state with harmful effects on their well-being;

(2) promote cooperation with the courts of other states to the end that a custody decree is rendered in that state which can best decide the case in the interest of the child;

(3) assure that litigation concerning the custody of a child take place ordinarily in the state with which the child and his family have the closest connection and where significant evidence concerning his care, protection, training, and personal relationships is most readily available, and that the courts of this state decline the exercise of jurisdiction when the child and his family have a closer connection with another state;

(4) discourage continuing controversies over child custody in the interest of greater stability of home environment and of secure family relationships for the child;

(5) deter abductions and other unilateral removals of children undertaken to obtain custody awards;

(6) avoid re-litigation of custody decisions of other states in this state insofar as feasible;

(7) facilitate the enforcement of custody decrees of other states; and

(8) promote and expand the exchange of information and other forms of mutual assistance between the courts of this state and those of other states concerned with the same child.

(b) This chapter shall be construed to promote the general purposes stated in this section. *As added by Acts 1977, P.L. 305, SEC. 1.*"

To override the deliberative discretion exercised by the Marion Superior Court in the matter of custody is to substitute our assessment of the criteria set forth in I.C. 31-1-11.6-7(c). It carries with it a possible implication of suspicion or distrust as to the ability or willingness of a foreign jurisdiction, whether a different state or a different nation,[1] to render justice as between an Indiana resident or an American citizen on the one hand, and a resident of the forum state or nation on the other. Such fears, even if they exist in some quarters, should never be implicated in a judicial setting and decisional process which, as here, specifically involves a spirit of comity and cooperation. It is unseemly for one or the other of two forums to engage in a "turf battle". As stated in *Plas v. Superior Court of San Joaquin County* (1984) 155 Cal.App.3d 1008, 202 Cal.Rptr. 490 (quoting *Bowden v. Bowden* (1982) 182 N.J.Super. 307, 440 A.2d 1160): "There is no interjurisdictional contest to be won or lost".

The spirit of comity and cooperation and the decisions and results which flow from it are required by the unambiguous language of the above-quoted "purposes" clause of the UCCJA. They are particularly vital because the issues in a custody dispute focus upon the best interests of the third party—the child—and only secondarily upon the immediate combatants, the father and the mother.

The case before us does not suggest a vindictive or surreptitious kidnapping in an effort to make a race for the courthouse. To the contrary, Karl's own testimony attributes Elisabeth's departure for France to a desire or need for rest and recuperation from post-partum depression. The record also reflects that Elisabeth had been subjected to psychological and verbal, if not physical, abuse. The scenario described permits a reasonable inference, at least for the purposes of a determination to decline to exercise jurisdiction, that Elisabeth sought the peace and safety of familiar and familial surroundings in the country of her origin and upbringing.

Our case is not dissimilar from *In Re Marriage of Cline, supra,* in this regard. The court there said:

"[Laurie] asserts, however, that the trial court did not abuse its discretion in declining jurisdiction.

William alleges that the trial court failed to consider that Laurie unilaterally removed the child from Indiana and ignored the provisions of Ind.Code 31-1-11.6-8. The language of that section is limited to a petitioner who has wrongfully taken the child from another state. In this action, Laurie was not the petitioner and the statute is limited to wrongful removal, not unilateral removal.

After examining the relevant portions of the UCCJA and the method of analysis contained in *Clark v. Clark, supra,*

---

1. I.C. 31-1-11.6-23 recites: "The general policies of this chapter extend to the international area." The Uniform Commission Comments to that provision state:

"Not all the provisions of the Act lend themselves to direct application in international custody disputes; but the basic policies of avoiding jurisdictional conflict and multiple litigation are as strong if not stronger when children are moved back and forth from one country to another by feuding relatives. Compare Application of Lang, 9 App.Div.2d 401, 193 N.Y.S.2d 763 (1959) and Swindle v. Bradley, 240 Ark. 903, 403 S.W.2d 63 (1966).

The first sentence makes the general policies of the Act applicable to international cases. This means that the substance of section 1 and the principles underlying provisions like sections 6, 7, 8, and 14(a), are to be followed when some of the persons involved are in a foreign country or a foreign custody proceeding is pending." (Emphasis supplied.) 9 *Uniform Laws Annotated* § 23 at 326–327 (Master Ed.1988).

we remain unpersuaded that the trial court abused its discretion. The trial court became aware of the California proceedings after William had filed his petition but prior to any determination of its jurisdiction.

\*　　\*　　\*　　\*　　\*　　\*

After communicating with the California court, the trial court declined to exercise jurisdiction. The provisions of UCCJA allow a trial court to communicate with a court of another state and exchange information prior to determining whether to retain or decline jurisdiction. IC 31–1–11.6–7(d). The UCCJA also provides that if the trial court determines that it is an inconvenient forum, the trial court may dismiss or stay the proceedings. IC 31–1–11.6–7(e) There were ample reasons for the trial court to determine that California was the more appropriate forum." 433 N.E.2d at 53–54.

Our case is truly no different than other cases involving appellate review of trial court discretion. It is well-established that we are precluded from reversing such decisions unless there has been a manifest abuse of that discretion. In the context of I.C. 31–1–11.6–7, the proposition was accurately stated in *Dennis v. Dennis* (1986) N.D., 387 N.W.2d 234, 235:

"It is well settled that the decision whether to decline to exercise jurisdiction on inconvenient-forum grounds lies entirely within the trial court's discretion, and its decision will be reversed on appeal only for an abuse of discretion. (Citations omitted.) An abuse of discretion, which implies an unreasonable, arbitrary, or unconscionable attitude on the part of the trial court, never is assumed and must be affirmatively established."

In this light, the North Dakota Supreme Court affirmed the decision of its trial court in declining to exercise custody jurisdiction and in deferring to Iowa. We should rule similarly.