**In re The Marriage of Anthony J. HARRIS, Appellant–Respondent,**

v.

**Teasha J. HARRIS, Appellee–Petitioner.**

**No. 49A04–0905–CV–256.**

Court of Appeals of Indiana.

Feb. 17, 2010.

Mark Small, Indianapolis, IN, Attorney for Appellant.

**OPINION**

BROWN, Judge.

Anthony Harris ("Husband") appeals the trial court's decree of dissolution of the marriage of Husband and Teasha Harris ("Wife"), in which the court awarded custody of the minor child of the parties to Wife, ordered that Husband pay child support and a spousal allowance to Wife, and ordered the distribution of the marital property of the parties. Husband raises four issues, which we revise and restate as follows:

I. Whether the trial court erred in denying Husband's motion to correct errors on the basis that Husband failed to properly preserve his claim that the court lacked personal jurisdiction over him;

II. Whether the trial court lacked personal jurisdiction over Husband to enter judgment as to child support, spousal allowance, and distribution of marital property; and

III. Whether the trial court erred in making a determination as to custody of the parties' minor child.

We affirm in part, reverse in part, and remand.

The relevant facts follow. Husband has been in the United States military since approximately 1990. Husband and Wife were married in December 1995 in Watertown, New York. Husband and Wife have one child, who was born on April 11, 1996. Husband and Wife met in Watertown, New York, where they married, and then "moved to Hinesville, Georgia, and Kansas, and then Germany." Transcript at 10. In late December 2005, Wife physically separated from Husband and moved to Indiana. Husband paid a financial allotment to Wife by sending a check to her or by depositing the allotment into an account. On September 12, 2008, Wife filed a petition for dissolution of marriage in Marion County, Indiana. In her petition, Wife stated that Husband was stationed in Germany and sought the dissolution of her marriage to Husband, primary custody of

the Husband and Wife's daughter, and a distribution of the parties' property and liabilities. Wife sought service upon Husband at the mailing address of "CMR 480 Box 1495/APO AE 09128." Appellant's Appendix at 12.

On October 3, 2008, Husband sent a notice letter to the Marion County Superior Court stating that he "decline[d] to accept voluntary service" under Section 516.12(c) of Title 32 of the Code of Federal Regulations [1] and returned by enclosure Wife's petition for dissolution, the appearance of Wife's attorney, and summons.[2] *Id.* at 16. On October 20, 2008, Husband filed a complaint for absolute divorce in New Hanover County, North Carolina. On December 1, 2008, Husband filed a claim for child custody and attorney fees in New Hanover County, North Carolina. Husband was in New Hanover County, North Carolina, on November 26, 2008, and Wife had Husband served by the sheriff in that county.

On November 25, 2008, Wife filed a motion for a hearing with the Marion County Superior Court, and the court set a hearing for December 4, 2008. On December 4, 2008, the trial court held a hearing, at which Wife was present and Husband did not appear. At the hearing, the trial court stated that it needed to confer with the court in North Carolina under the "Uniform Child Custody Act" regarding jurisdiction over the child custody issue in the case. Transcript at 4. Also at the hearing, Wife made statements regarding Husband's military base income and housing allowance, Wife's income, Wife's desire to have Husband continue to pay the car payment and insurance for the parties'

vehicle in her possession, and Husband's military pension.

On December 8, 2008, the trial court contacted the North Carolina court and discussed the issue of jurisdiction regarding the complaint for child custody filed in North Carolina. The trial court found that the jurisdictional requirements of Ind. Code § 31–21–5–1 had been met and that the North Carolina court agreed that jurisdiction shall be with the court in Marion County, Indiana. Accordingly, the trial court ordered that "all issues regarding the minor child . . . as well as the Petition for Dissolution of Marriage filed in Marion County, Indiana . . . shall be heard in this Court," and set a final hearing for December 30, 2008. *Id.* at 26. On December 30, 2008, the trial court rescheduled the final hearing for February 2, 2009, because "copies of 12–8–09 order were not sent to parties." *Id.* at 4.

The trial court held a final hearing on February 2, 2009, at which Wife was present and Husband did not appear. The trial court noted that it agreed to take "jurisdiction over the children's issues and the Petition for Dissolution" and that "anything else" would need to be addressed in North Carolina. *See* Transcript at 12. Following the hearing, the trial court issued a decree for dissolution of marriage of Husband and Wife. The decree ordered the marriage of the parties dissolved; awarded custody of the parties' minor child to Wife; ordered Husband to pay $239 per week as child support, $500 per month to Wife as spousal allowance, delinquent automobile payments in the approximate amount of $1,050, and the balance owed on the vehicle of $14,216.70; ordered Husband to transfer title to the vehicle to

---

1. The federal regulations cited by Husband relate to service of civil process outside of the United States by an army official. *See* 32 CFR §§ 516.8–516.14.

2. Husband's letter was file-stamped on October 7, 2008.

Wife; and awarded thirty-two percent of Husband's military retirement to Wife.

On March 2, 2009, Husband filed a motion to correct errors and an affidavit in support of the motion. Husband's motion argued that the trial court did not have personal jurisdiction over Husband, that a default judgment could not be rendered against Husband because he was a member of the United States military stationed overseas, that Husband was not properly served as set forth in his original notice letter, and that Husband never received notice of the hearing on February 2, 2009. Husband filed an emergency motion to suspend support payments. On March 11, 2009, Wife filed a response to Husband's motion to correct errors and motion to strike Husband's affidavit in support of his motion to correct errors. Wife also filed an answer to Husband's emergency petition to suspend support payments and a motion for fees. On March 23, 2009, the trial court granted Wife's motion to strike Husband's affidavit in support of his motion to correct errors and denied Husband's motion to correct errors upon the grounds that "[t]here exists no error properly preserved by [Husband] in this case and the [motion to correct errors] was therefore improperly filed." Appellant's Appendix at 106.

Before addressing Husband's arguments, we note that Wife did not file an appellee's brief.[3] When an appellee fails to submit a brief, we do not undertake the burden of developing the appellee's arguments, and we apply a less stringent standard of review, that is, we may reverse if the appellant establishes prima facie error. *Zoller v. Zoller,* 858 N.E.2d 124, 126 (Ind. Ct.App.2006). This rule was established so that we might be relieved of the burden of controverting the arguments advanced

in favor of reversal where that burden properly rests with the appellee. *Wright v. Wright,* 782 N.E.2d 363, 366 (Ind.Ct. App.2002). However, we review de novo questions of law, regardless of the appellee's failure to submit a brief. *McClure v. Cooper,* 893 N.E.2d 337, 339 (Ind.Ct.App. 2008).

## I.

The first issue is whether the trial court erred in denying Husband's motion to correct errors upon the basis that Husband failed to properly preserve his claim that the court lacked personal jurisdiction over him. Husband argues that a motion to correct errors is "an appropriate procedural means for challenging either personal or subject matter jurisdiction." Appellant's Brief at 10. Husband also argues that "[a]s a general rule, new issues cannot be raised in a motion to correct error. However, ... exceptions to that general rule lie with challenges to personal and subject matter jurisdiction." *Id.* at 11. Husband further argues that a party is not required to raise a personal jurisdiction defense in a responsive pleading.

A judgment rendered without personal jurisdiction is void. *Hill v. Ramey,* 744 N.E.2d 509, 512 (Ind.Ct.App. 2001) (citing *Stidham v. Whelchel* 698 N.E.2d 1152, 1156 (Ind.1998)). A defendant can waive the lack of personal jurisdiction and submit himself to the jurisdiction of the court if he responds or appears and does not contest the lack of jurisdiction. *Id.* at 512 n. 7 (citing *Stidham,* 698 N.E.2d at 1155). The Indiana Supreme Court has observed that a claim of lack of personal jurisdiction may be waived, but that waiver "must be by the person holding the rights." *Stidham,* 698 N.E.2d at

---

**3.** On July 28, 2009, Wife filed a verified motion for extension of time in which to file an appellee's brief. On September 4, 2009, this court denied Wife's motion.

1155–1156. The waiver doctrine does not mean that any party that has the power to waive a defense will be found to have done so. *Id.* at 1156. The fact that a defendant is served with a summons in another state does not demonstrate waiver. *See id.* at 1153–1156 (concluding that the defendant did not waive his defense of lack of personal jurisdiction where the defendant had received service of process in another state by certified mail). Indeed, the Court has recognized that "[i]t is a bold move, but an option available to a nonresident is to ignore a pending proceeding and take the risk that a subsequent challenge to personal jurisdiction will prevail." *Id.* at 1156 (citing *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 706, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982) ("A defendant is always free to ignore the judicial proceedings, risk a default judgment, and then challenge that judgment on jurisdictional grounds in a collateral proceeding.")).

 A judgment that is void for lack of personal jurisdiction may be collaterally attacked at any time. *Id.* A motion to correct errors is a permissible vehicle to obtain relief from a void judgment. *See Roberts v. Watson,* 172 Ind.App. 108, 114, 359 N.E.2d 615, 619 n. 1 (1977) (noting that although relief from a void judgment may be sought under Ind. Trial Rule 60(B)(6), a motion to correct errors was a permissible vehicle for the challenge as well).

 Here, the chronological case summary shows that no attorney filed an appearance to represent Husband in the trial court proceedings. In addition, Husband sent a notice letter to the trial court dated October 3, 2008, which was file-stamped on October 7, 2008, informing the trial court that he "decline[d] to accept voluntary service" under "§ 516.12(c) of 32 CFR 516." [4] *See* Appellant's Appendix at 16. Also, the record shows that Husband was served by a sheriff in New Hanover County, North Carolina, on November 26, 2008. On March 2, 2009, Husband filed a motion to correct errors, an affidavit in support of the motion, and an emergency motion to suspend support payments. Husband's motion argued that the trial court did not have personal jurisdiction over Husband, that a default judgment could not be rendered against him because he was a member of the United States military stationed overseas, and that he was not properly served. Neither Husband's letter nor the fact that he was served in North Carolina demonstrates a waiver. *See Stidham,* 698 N.E.2d at 1155–1156 (concluding that the trial court erred in finding the defendant's motion was barred and that the defendant did not waive his defense of lack of personal jurisdiction where the defendant had received service of process in another state by certified mail); *see also Laflamme v. Goodwin,* 911 N.E.2d 660, 666–667 (Ind.Ct. App.2009) (finding that the fact that the appellant did not contest personal jurisdiction when the Indiana court domesticated a divorce decree of another state did not serve as a valid waiver of the appellant's right to subsequently contest the Indiana court's exercise of personal jurisdiction over him); *Hill,* 744 N.E.2d at 512 (observing that the motion for continuance

---

4. 32 C.F.R. § 516.12(c) provides:

 If a DA official receives a request to serve state court process on a person overseas, he will determine if the individual wishes to accept service voluntarily. Individuals will be permitted to seek counsel. If the person will not accept service voluntarily, the party requesting service will be notified and advised to follow procedures prescribed by the law of the foreign country concerned. (See, for example, The Hague Convention, reprinted in 28 USCA Federal Rules of Civil Procedure, following Rule 4).

filed by an attorney on the defendant's behalf did not demonstrate a waiver as that attorney never entered an appearance for the defendant).

Therefore, the trial court erred in denying Husband's motion to correct errors upon the basis that Husband failed to properly preserve his claim that the court lacked personal jurisdiction to issue the decree.[5]

## II.

The next issue is whether the trial court lacked personal jurisdiction over Husband to enter judgment as to child support, spousal allowance, and distribution of marital property. Husband argues that "[t]he trial court lacked jurisdiction to do anything except simply to dissolve the parties' marriage." Appellant's Brief at 14. Specifically, Husband argues that Ind. Trial Rule 4.4(A)(7) does not provide a basis for personal jurisdiction and that he "has insufficient contacts with Indiana for the trial court to have exercised *in personam* jurisdiction over him for the incidences of marriage." *Id.* at 16.

We address separately the trial court's jurisdiction over Husband for the purposes of: (A) dissolving the marriage of the parties; and (B) adjudicating the incidences of the marriage and child support.

### A. *Jurisdiction for the Purpose of Dissolving the Marriage*

We initially note that a dissolution of marriage proceeding has historically contained two principal elements: (1) the divorce, that is, the changing of the parties' status from married to unmarried, and (2) the adjudication of the incidences of marriage, that is, affecting a nonresident respondent's interest in property. *In re Marriage of Rinderknecht*, 174 Ind.App. 382, 388, 367 N.E.2d 1128, 1133 (1977). The changing of the parties' status from married to unmarried has been denominated as an *in rem* proceeding, and the trial court may, upon *ex parte* request of a resident party, dissolve a marriage without obtaining personal jurisdiction over the other party. *Id.*; *Persinger v. Persinger*, 531 N.E.2d 502 (Ind.Ct.App.1987) (noting

---

**5.** Husband also argues that the trial court erred in granting Wife's motion to strike his affidavit in support of his motion to correct errors. Husband argues that his affidavit was "relevant to the issues of jurisdiction, notice, and award of his pension as a marital asset." Appellant's Brief at 13. Husband also argues that Wife's motion to strike "does not mention, or support through cogent reasoning or citation to authority, her motion to strike [Husband's] affidavit." *Id.*

Ind. Trial Rule 59(H)(1) provides that "[w]hen a motion to correct error is based upon evidence outside the record, the motion shall be supported by affidavits showing the truth of the grounds set out in the motion and the affidavits shall be served with the motion." If a party opposes such a motion, that party may file opposing affidavits. *See* T.R. 59(H)(2). Husband's motion to correct errors argued that the trial court did not have personal jurisdiction over him because he and Wife "never resided in Indiana as 'husband

and wife." Appellant's Appendix at 38–39. Husband's affidavit in support of his motion stated that he and Wife never lived in the State of Indiana as Husband and Wife and that he was not properly served. Wife's response to Husband's motion to correct errors and motion to strike Husband's affidavit argued that the trial court should deny Husband's motion to correct errors. It does not appear, however, that Wife's response contained any argument that Husband's affidavit in support of his motion failed to comply with Indiana's Trial Rules or was improper for any other reason. Further, while Wife's response included fourteen attached exhibits, she did not attach affidavits or exhibits in opposition to the statement in Husband's affidavit that Husband never lived in Indiana with Wife as husband and wife. Under the circumstances, we conclude that the trial court erred in granting Wife's motion to strike Husband's affidavit.

that *in personam* jurisdiction over one spouse is not a prerequisite to the entry of a dissolution decree). The residency of one party satisfies the minimum contact necessary for the exercise of such *in rem* jurisdiction. *Rinderknecht,* 174 Ind.App. at 391, 367 N.E.2d at 1133–1135; *Persinger,* 531 N.E.2d 502 (noting that *in rem* jurisdiction gives the court jurisdiction to dissolve a marriage). However, *in personam* jurisdiction over both parties is required to adjudicate the parties' property rights. *Rinderknecht,* 174 Ind.App. at 388, 367 N.E.2d at 1133.

■ Here, it is uncontested that Wife was a resident of Marion County, Indiana.[6] Thus, the Marion County Superior Court had *in rem* jurisdiction to dissolve the marriage and return the status of the parties from married to unmarried. *See id.*

B. *Jurisdiction for the Purpose of Adjudicating the Incidences of Marriage and Child Support*

In addition to dissolving the marriage of Husband and Wife, the trial court ordered Husband to pay $239 per week as child support, $500 per month to Wife as spousal allowance, delinquent automobile payments in the approximate amount of $1,050 and the balance owed on the vehicle of $14,216.70, to transfer title to the vehicle to Wife, and awarded thirty-two percent of Husband's military retirement to Wife.[7]

■ In order for a trial court to have jurisdiction over marital property, the court must have *in personam* jurisdiction over both parties. *Horlander v. Horlander,* 579 N.E.2d 91, 93 (Ind.Ct.App.

1991) (citing *In re Marriage of Hudson,* 434 N.E.2d 107, 112 (Ind.Ct.App.1982), *cert. denied,* 459 U.S. 1202, 103 S.Ct. 1187, 75 L.Ed.2d 433 (1983)), *reh'g denied, trans. denied.* Additionally, a support order is incident to marriage and requires *in personam* jurisdiction of both parties. *Johnston v. Johnston,* 825 N.E.2d 958, 963 (Ind. Ct.App.2005). A court obtains such jurisdiction if "minimum contacts" exist between the state and the party over whom the state seeks to exercise control. *Horlander,* 579 N.E.2d 91; *see also Rinderknecht,* 174 Ind.App. at 393, 367 N.E.2d at 1135 n. 7 (citing *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), *reh'g denied; Int'l Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). The minimum contact requirement for obtaining *in personam* jurisdiction in a dissolution proceeding is always satisfied if the defendant is a resident of Indiana. *Rinderknecht,* 174 Ind. App. at 393, 367 N.E.2d at 1135. If the defendant is a nonresident, "then the minimal contact requirement can be met if the requirements of Ind. Rules of Procedure, Trial Rule 4.4(A)(7) or some other constitutionally acceptable minimum contact are met." *Id.* Ind. Trial Rule 4.4(A) provides in part:

Any person or organization that is a nonresident of this state, a resident of this state who has left the state, or a person whose residence is unknown, submits to the jurisdiction of the courts of this state as to any action arising from the following acts committed by him or her or his or her agent:

\* \* \* \* \* \*

---

**6.** Wife testified at the February 2, 2009, hearing that she was a resident of Indiana for three and one half years and a resident of Marion County for three months at the time she filed her petition for dissolution of marriage.

**7.** We observe that the trial court entered the decree of dissolution despite the fact that it had previously noted that it agreed to take "jurisdiction over the children's issues and the Petition for Dissolution" and that "anything else" would need to be addressed in North Carolina. *See* Transcript at 12.

(7) living in the marital relationship within the state notwithstanding subsequent departure from the state, as to all obligations for alimony, custody, child support, or property settlement, if the other party to the marital relationship continues to reside in the state; . . . .

\*　　\*　　\*　　\*　　\*　　\*

In addition, a court of this state may exercise jurisdiction on any basis not inconsistent with the Constitutions of this state or the United States.

Thus, Ind. Trial Rule 4.4(A)(7) provides that any person who lived in a marital relationship in Indiana and subsequently has left the state, leaving behind a spouse who continues to reside in Indiana, submits to jurisdiction of this state. *See Horlander,* 579 N.E.2d at 93–94; *Rinderknecht,* 174 Ind.App. at 393, 367 N.E.2d at 1135.

▪ Here, the record reveals that Wife testified at the court's proceeding on December 4, 2008, stating that she met Husband in Watertown, New York, and then she and Husband "moved to Hinesville, Georgia, and Kansas, and then Germany." Transcript at 10. In addition, Husband's affidavit in support of his motion to correct errors states that "[Wife] and myself [sic] never lived in the State of Indiana as Husband and Wife, and I have never even lived in the State of Indiana at any time I was married to [Wife]." Appellant's Appendix at 42. Wife's response to Husband's motion to correct errors and motion to strike Husband's affidavit in support of the motion to correct errors does not contradict her testimony at the December 4, 2008 hearing or Husband's affidavit with respect to Husband not having lived in Indiana at any time during the marriage of the parties. Under the facts of this case, we conclude that the personal jurisdiction of the Marion County Superior Court over

Husband is not established under Ind. Trial Rule 4.4(A)(7). *See Rinderknecht,* 174 Ind.App. at 393, 367 N.E.2d at 1136 (holding that the court did not have personal jurisdiction over the defendant where the only evidence was that the defendant was a resident of another state and observing that "TR 4.4(A)(7) is not broad enough in its scope to encompass the situation which is present in the case at bar"); *see also In re Marriage of Hudson,* 434 N.E.2d at 112–114 (holding that the Indiana court lacked jurisdiction to distribute the marital property of the parties under Ind. T.R. 4.4(A)(7) because the court lacked personal jurisdiction over one of the spouses).

▪ We next consider whether the trial court obtained personal jurisdiction over husband upon any other basis "not inconsistent with the Constitutions of this state or the United States." *See* Ind. Trial Rule 4.4(A); *see Rinderknecht,* 174 Ind. App. at 393, 367 N.E.2d at 1135. "The Due Process Clause of the Fourteenth Amendment and article 1, section 12 of the Indiana Constitution require that before a court may exercise personal jurisdiction over a party, that person must have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Laflamme,* 911 N.E.2d at 666 (citing *Anthem Ins. Cos. v. Tenet Healthcare Corp.,* 730 N.E.2d 1227, 1237 (Ind.2000) (citing *Int'l Shoe Co.,* 326 U.S. at 316, 66 S.Ct. 154)) (internal quotation marks omitted). The contacts to be examined must be the purposeful acts of the defendant, not the acts of the plaintiff or any third parties. *Id.* Our analysis as to whether personal jurisdiction exists under the Due Process Clause is guided by a two-part test. *Id.* We first consider the contacts between the defendant and the forum state to determine if they are sufficient to establish that the defendant could

reasonably anticipate being hauled into court there. *Id.* (citing *Anthem Ins. Cos.,* 730 N.E.2d at 1237 (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985))). "If the contacts are sufficient, then we must evaluate whether the exercise of personal jurisdiction offends traditional notions of fair play and substantial justice by weighing a variety of interests." *Id.* (citing *Anthem Ins. Cos.,* 730 N.E.2d at 1237 (citing *Burger King Corp.,* 471 U.S. at 476, 105 S.Ct. 2174)) (internal quotation marks omitted).

In this case, there are no contacts sufficient to establish personal jurisdiction over Husband. Husband's only contacts with Indiana are paying a financial allotment to Wife by sending a check to her or depositing it into an account. We cannot say that this limited contact constitutes "purposefully avail[ing himself] of the privilege of conducting activities within [Indiana], thus invoking the benefits and protections of [Indiana's] laws." *See Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). Further, Husband's contacts with Indiana were incidental to Wife's decision to move to this state with the parties' child and too attenuated to subject him to the jurisdiction of Indiana courts. *See Laflamme,* 911 N.E.2d at 665–666 (holding that the trial court did not have personal jurisdiction over the defendant under the Fourteenth Amendment or article 1, section 12 of the Indiana Constitution where the defendant never lived in Indiana and his daughter was not conceived in Indiana; the defendant's only contact with the state was sending letters and gifts to his daughter, responding to requests to continue paying child support and assist with the educational expenses of his daughter, and paying child support pursuant to another state's court order; and observing that the defendant's contacts with Indiana were incidental to the decision of his daughter's mother to move

to the state). Accordingly, the trial court did not have personal jurisdiction over Husband under Ind. Trial Rule 4.4(A).

In addition, Indiana has adopted the Uniform Interstate Family Support Act (the "UIFSA"), which provides a mechanism for cooperation between state courts in enforcing duties of support. *Laflamme,* 911 N.E.2d at 664. The UIFSA provides that an Indiana court may exercise jurisdiction over nonresidents under the following circumstances:

> In a proceeding to establish, enforce, or modify a support order or to determine paternity, an Indiana tribunal may exercise personal jurisdiction over a nonresident individual or the individual's guardian or conservator if:
>
> \* \* \* \* \* \*
>
> (2) the individual submits to the jurisdiction of Indiana by:
>
> (A) consent;
>
> (B) entering an appearance, except for the purpose of contesting jurisdiction; or
>
> (C) filing a responsive document having the effect of waiving contest to personal jurisdiction; [or]
>
> \* \* \* \* \* \*
>
> (8) there is any other basis consistent with the Constitution of the State of Indiana and the Constitution of the United States for the exercise of personal jurisdiction.

Ind.Code § 31–18–2–1.

■ Here, with respect to subsection 2(C), as previously mentioned, the record shows that no attorney filed an appearance to represent Husband in the trial court proceedings, Husband sent a notice letter to the trial court on October 3, 2008 stating that he declined to accept voluntary service, and Husband filed a motion to

correct errors arguing that the trial court did not have personal jurisdiction over him. Given the content and timing of Husband's letter and his motion following the trial court's decree of dissolution, we conclude that Husband's filings with the trial court did not have the effect of waiving his right to contest personal jurisdiction under subsection 2(C). *See Laflamme,* 911 N.E.2d at 665 (concluding that the defendant's letters did not have the effect of waiving his right to contest jurisdiction under the UIFSA given the content of the defendant's first letter and the timing of the second letter).

Further, as previously concluded, the trial court here did not obtain personal jurisdiction over Husband based upon "any other basis consistent with the Constitution of the State of Indiana and the Constitution of the United States for the exercise of personal jurisdiction." As a result, the trial court did not have personal jurisdiction over Husband under subsection (8) of Ind.Code § 31-18-2-1 for the purpose of ordering child support.

Based upon the record, we conclude that the trial court's order as to child support, spousal allowance, payment for and transfer of title to the parties' vehicle in Wife's possession, Husband's military retirement, and any other incidences of marriage is void for lack of personal jurisdiction over Husband.[8]

### III.

The next issue is whether the trial court erred in making a determination as to custody of the parties' minor child. Initially, we note that a trial court may adjudicate custody without acquiring personal jurisdiction over an absent parent given reasonable attempts to furnish notice of the proceedings. *In re Marriage of Hudson,* 434 N.E.2d at 117–119 (concluding that the trial court's jurisdiction over the custody proceeding without obtaining *in personam* jurisdiction over the father did not violate his due process rights and noting that the traditional *in rem* approach applies to custody cases).

#### A. The Servicemembers Civil Relief Act

Husband appears to argue that he "was entitled to set aside the trial court's judgment ... under the Servicemembers Civil Relief Act." Appellant's Brief at 16. The trial court is obligated to observe any applicable requirements of the Servicemembers Civil Relief Act, found at 50 App. U.S.C.A. §§ 501–596, in child custody proceedings.

Section 521(a) of the Servicemembers Civil Relief Act applies to any civil action or proceeding, including any child custody

---

8. Husband appears to argue that he did not receive proper service. As previously mentioned, "[a] judgment entered where there has been no service of process is void for want of personal jurisdiction." *Stidham,* 698 N.E.2d at 1155. However, we observe that, having concluded that the trial court lacked personal jurisdiction over Husband for the purpose of entering judgment as to the incidences of marriage, we need not address whether service was defective.

Husband also argues that he "was entitled to set aside the trial court's judgment ... under the Servicemembers Civil Relief Act." Appellant's Brief at 16. Specifically, Husband argues that he has a meritorious defense to the trial court's decree because "[t]he trial court erroneously awarded part of [Husband's] unvested military pension to [Wife]" and because "[t]he trial court erroneously awarded spousal maintenance...." Appellant's Br. at 20, 22. We need not address Husband's arguments regarding the applicability of the Servicemembers Civil Relief Act to the extent that the decree awarded spousal maintenance and a percentage of Husband's military retirement because we reverse the trial court's decree of dissolution as to Husband's military retirement and award of spousal allowance on other grounds.

proceeding, in which the defendant does not make an appearance. *See* 50 App. U.S.C.A. § 521(a). Section 521(b)(1) of the Act provides that before entering judgment for a plaintiff, a court shall require the plaintiff to file with the court an affidavit stating whether or not the defendant is in military service and showing necessary facts to support the affidavit, or, if the plaintiff is unable to determine whether or not the defendant is in military service, stating that the plaintiff is unable to determine whether or not the defendant is in military service. *See* 50 App. U.S.C.A. § 521(b)(1). The Section also provides that the affidavit may be satisfied "by a statement, declaration, verification, or certificate, in writing, subscribed and certified or declared to be true under penalty of perjury." *See* 50 App. U.S.C.A. § 521(b)(4). In addition, if the defendant is in military service, Section 521(b)(2) provides that the court may not enter a judgment until after the court appoints an attorney to represent the defendant. *See* 50 App. U.S.C.A. § 521(b)(2).

▇ Here, the record does not show that the trial court required Wife to file an affidavit with the court as required by 50 App. U.S.C.A. § 521(b)(1). The record also shows that no attorney made an appearance on Husband's behalf in the trial court proceedings and that the trial court did not appoint an attorney to represent Husband. Therefore, the trial court erred in failing to comply with the provisions of the Servicemembers Civil Relief Act prior to entering the decree. *See Matter of Marriage of Thompson,* 17 Kan.App.2d 47, 832 P.2d 349 (1992) (holding that a judg-

ment of divorce and child support violated the former version of the Servicemembers Civil Relief Act where no affidavit was filed showing that the father was in military service and no request was made and the trial court did not appoint an attorney to represent father and protect his interests). Accordingly, we reverse the trial court's order as to child custody on the basis that it did not comply with the provisions of the Servicemembers Civil Relief Act set forth above prior to entering judgment, and we remand with instruction that the trial court comply with the provisions of the Servicemembers Civil Relief Act, specifically 50 App. U.S.C.A. § 521, in the child custody proceedings.

**B.** *Indiana's Uniform Child Custody Jurisdiction and Enforcement Act*

Indiana has adopted provisions of the 1997 Uniform Child Custody Jurisdiction and Enforcement Act (Ind.Code § 31–21 herein referred to as the "Act").[9] *See* Ind.Code § 31–21. The purpose of the Act is to avoid jurisdictional competition and conflict with courts of other states in matters of child custody. *See Counceller v. Counceller,* 810 N.E.2d 372, 376 (Ind.Ct. App.2004), *trans. denied.* The Act sets forth the circumstances under which Indiana courts have jurisdiction over a child custody matter. Ind.Code § 31–21–5 contains provisions regarding jurisdiction to make an initial child custody determination, exclusive and continuing jurisdiction, jurisdiction to make a custody modification, and temporary emergency jurisdiction. *See* Ind.Code §§ 31–21–5–1 through –4.

---

**9.** Indiana previously adopted the 1968 Uniform Child Custody Jurisdiction Act, 9 U.L.A. 107 (Master ed. 1972) (the "1968 Uniform Act"). *See In re Marriage of Hudson,* 434 N.E.2d at 114. In 1997, the 1968 Uniform Act was repealed and replaced by the Uniform Child Custody Jurisdiction and Enforce-

ment Act (the "1997 Uniform Act"). *See* Uniform Child Custody Jurisdiction and Enforcement Act (1997), 9(1A) U.L.A. 657 (1999). Effective July 1, 2008, Indiana adopted provisions of the 1997 Uniform Act. *See* Pub.L. No. 138–2007, § 45 (eff. July 1, 2008).

In addition, Ind.Code § 31–21–4–1 provides that "[a]n Indiana court may communicate with a court in another state concerning a proceeding arising under [the UCCJA]." Ind.Code § 31–21–4–2 provides that "[t]he court may allow the parties to participate in the communication. If the parties are not able to participate in the communication, the parties must be given the opportunity to present facts and legal arguments before a decision on jurisdiction is made." Husband specifically argues that "the trial court did not give [him] an opportunity to present facts and legal arguments, as required by I.C. § 31–21–4–2, before a decision on jurisdiction was made," and therefore that "[t]he trial court's exercise of jurisdiction was defective." Appellant's Brief at 25.

We observe that Ind.Code § 31–21–4–2 is identical to Section 110(b) of the 1997 Uniform Act. The drafter's comment to Section 110 of the 1997 Uniform Act provides in part:

> The second sentence of subsection (b) protects the parties against unauthorized ex parte communications. The parties' participation in the communication may amount to a hearing if there is an opportunity to present facts and jurisdictional arguments. However, absent such an opportunity, the participation of the parties should not to [sic] be considered a substitute for a hearing and the parties must be given an opportunity to fairly and fully present facts and arguments on the jurisdictional issue before a determination is made. This may be done through a hearing or, if appropriate, by affidavit or memorandum. The court is expected to set forth the basis for its jurisdictional decision, including any court-to-court communication which may have been a factor in the decision.

1997 Uniform Act § 110, comment.[10]

 Here, upon discovering at the December 4, 2008 hearing that a custody proceeding regarding the parties' child was also pending in a court in North Carolina, the trial court communicated with that court as permitted by Ind.Code § 31–21–4–1 in an effort to determine the appropriate forum. When engaging in such a communication, however, the court must either allow the parties to participate[11] or, if they do not participate, the parties "must be given the opportunity to present facts and legal arguments," and it is important that this opportunity be afforded the parties *before* a decision on jurisdiction is made." *See* Ind.Code § 31–21–4–2 (emphasis added). The record reveals that the trial court here did not afford Husband such an opportunity to participate and made a decision on jurisdiction adverse to Husband without presenting him any opportunity to present facts or arguments. Under the circumstances, this was reversible error. *See Cole v. Cush-*

---

10. This court has previously observed that the comments to the 1968 Uniform Act were helpful or applied equally to the provisions of the 1968 Uniform Act adopted by this state. *See Sudvary v. Mussard,* 804 N.E.2d 854, 857–858 (Ind.Ct.App.2004); *Horlander,* 579 N.E.2d at 96–98; *In re Marriage of Hudson,* 434 N.E.2d at 115 n. 7. Similarly, the drafter's comments to the 1997 Uniform Act are helpful in interpreting those Indiana Code provisions based upon sections of the 1997 Uniform Act.

11. The drafter's comment to § 110 of the 1997 Uniform Act also provides in part:
Communication is authorized ... whenever the court finds it would be helpful. The court may authorize the parties to participate in the communication. However, the Act does not mandate participation. Communication between courts is often difficult to schedule and participation by the parties may be impractical. Phone calls often have to be made after-hours or whenever the schedules of judges allow.

*man,* 946 A.2d 430, 435 (Me.2008) (reversing the trial court's determination of jurisdiction and holding that the court failed to allow the parties to submit facts and legal arguments before a decision on jurisdiction was made as required by the state's statutory provision which was identical to subsection 110(b) of the 1997 Uniform Act).[12]

We reverse the court's decree of dissolution as to its award of custody of the parties' minor child and remand with instructions to comply with the provisions of the Servicemembers Civil Relief Act, specifically 50 App. U.S.C.A. § 521, in the child custody proceedings, and to make a decision on jurisdiction in accordance with the requirements of Ind.Code § 31–21, including Ind.Code §§ 31–21–4–1 and –2.

For the foregoing reasons, we reverse the trial court's order denying Husband's motion to correct errors on the basis that Husband failed to properly preserve his claim that the court lacked personal jurisdiction, affirm the trial court's decree of dissolution as to the court's order dissolving the marriage of the parties and changing the status of the parties from married to unmarried, reverse the trial court's decree as to those portions adjudicating the incidences of marriage as set forth herein, and reverse the trial court's decree as to its award of custody of the parties' minor child to Wife and remand with instructions to comply with the provisions of the Servicemembers Civil Relief Act in the child custody proceedings and to make a decision on jurisdiction in accordance with the

requirements of Indiana's Uniform Child Custody Jurisdiction and Enforcement Act.

Affirmed in part, reversed in part, and remanded.

CRONE, J., and MAY, J., concur.

---

12. We also observe that Ind.Code § 31–21–4–4 requires the trial court to make a record of any communication with a court of another state, and that the parties be promptly informed of the communication and granted access to the record. The record of communications may include "notes or transcripts of a court reporter who listened to a conference call between the courts, an electronic recording of a telephone call, a memorandum or an electronic record of the communication between the courts, or a memorandum or an electronic record made by a court after the communication." *See* § 110 of the 1997 Uniform Act, comment. The drafter's comment to § 110 of the 1997 Uniform Act also states that "[t]he court is expected to set forth the basis for its jurisdictional decision, including any court-to-court communication which may have been a factor in the decision."